1  BARRY J. PORTMAN
   Federal Public Defender
2
   RONALD TYLER
3  Assistant Federal Public Defender
   19th Floor Federal Building
4  450 Golden Gate Avenue
   San Francisco, CA 94102
5  (415) 436-7700

6  Counsel for Defendant Williams

7

8
                    IN THE UNITED STATES DISTRICT COURT
9
                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
10

11
   UNITED STATES OF AMERICA,        )   No. CR 07-0645 MMC
12                                  )
                  Plaintiff,        )   **DEFENDANT RONALD WILLIAM'S**
13                                  )   **NOTICE OF MOTION AND MOTION**
           v.                       )   **FOR REVOCATION OF**
14                                  )   **MAGISTRATE'S DETENTION ORDER**
   RONALD WILLIAMS, et al.,         )
15                                  )   Date: March 19, 2008
                  Defendants.       )
16 _____ )

17      To: United States Attorney Joseph P. Russoniello and Assistant United States Attorneys

18 Barbara Silano and Kirstin Ault.  Please Take Notice that on March 19, 2008, or as soon

19 thereafter as the matter may be heard, the defendant, Ronald Williams, will present oral argument

20 in support of the following motion and memorandum in support thereof to revoke the

21 magistrate's detention order.

22                              **INTRODUCTION**

23      On October 24, 2007, defendant Ronald Williams made his initial appearance on an

24 indictment charging conspiracy to possess with intent to distribute heroin, conspiracy to

25 distribute heroin and possession with intent to distribute heroin.  The charges are violations of

26
   DEF.'S MOT. FOR REVOCATION OF
   DETENTION ORDER
   *U.S. v. Williams* CR07-0645 MMC            1

1  Title 21 U.S.C. §§ 841 and 846. On November 1, 2007, Magistrate Judge Bernard Zimmerman
2  conducted a detention hearing. At the hearing, Magistrate Judge Zimmerman found that Mr.
3  Williams had overcome the presumption that no conditions would assure his presence in court.
4  Nevertheless, the magistrate ordered Mr. Williams detained, ruling that he had not overcome the
5  presumption that no combination of conditions would assure the safety of the community, were
6  he to be released. *See* Detention Order, attached as Exhibit A.
7      Mr. Williams hereby seeks de novo review and revocation of the magistrate's detention
8  order pursuant to 18 U.S.C. § 3145(b).

## STATEMENT OF FACTS

10      Beginning in December 2005, the government conducted a criminal investigation of an
11  alleged drug trafficking organization, the so-called Daniel Verdugo Leon Drug Trafficking
12  Organization.[1] The investigation was apparently initiated based upon information disclosed to
13  the Drug Enforcement Administration by a confidential source. Within a few weeks of the
14  initiation of the investigation, it is alleged that DEA Agent Carl Bonner had begun the
15  undercover purchase of drugs from Mr. Verdugo Leon. Those purchases allegedly continued for
16  months. After eight months of undercover work, the government obtained the first in a series of
17  wiretap orders in August 2006.
18      Ronald Williams was allegedly monitored arranging and consummating street-level
19  quantity purchases of heroin and cocaine between August 2006 and May 2007. A review of
20  discovery suggests that Mr. Williams is never alleged to have purchased more than 9 ounces and
21  at numerous times allegedly purchased less than an ounce of controlled substances. The
22  government never alleges that Mr. Williams acted in any leadership capacity. Although the
23  investigation continued after May 2007, there is no indication of any alleged criminal conduct on

---

[1] The source of the allegations regarding the government's evidence is discovery material produced to the defense.

DEF.'S MOT. FOR REVOCATION OF
DETENTION ORDER
*U.S. v. Williams* CR07-0645 MMC        2

Mr. Williams part after that date.  Five months later, Ronald Williams was arrested at his mother's home.  He made his initial appearance in the case with many co-defendants shortly thereafter.

On November 1, 2007, at the initial detention hearing, defense counsel argued that the presumptions of flight risk and danger were rebutted.[2]  Counsel noted that Mr. Williams has strong family and community ties.  He has been a Bay Area resident for all of his 59 years.  He lives with his mother and has regular contact with all of his siblings.  His mother is willing to post her home, which has over $250,000 in equity.  His brother, Ledell, is also willing to serve as a surety.  Counsel argued that any existing substance abuse issues could be addressed through testing.

In response to flight risk and danger concerns arising from Mr. Williams's prior record, defense counsel asserted that, although that record was quite lengthy, much of it was also quite old. Mr. Williams last suffered a narcotics conviction 15 years ago.  His only firearms conviction – a possessory offense – was 11 years ago.  As for evidence of his pretrial performance, the only blemish on an otherwise spotless record of appearances was a failure to appear from 30 years ago. Moreover, there is no evidence that Mr. Williams ever committed a crime while a prior prosecution was pending.  Counsel further asserted that the likelihood of Mr. Williams committing a crime on release was further diminished by the fact that the alleged conspiracy had been broken up by virtue of the mass arrests that preceded the bail hearing. Counsel posited that any lingering risk of flight or danger could be amply addressed through the posting of the family home and electronic monitoring with G.P.S.

Finally, counsel underscored the fact that this complex case would likely last many months, during which a presumptively innocent man would be incarcerated without trial.

---

[2] The source of references to the detention hearing is the official hearing tape, provided separately to Court and counsel.  References to the defendant's history are also supported by the Pretrial Services Report.

DEF.'S MOT. FOR REVOCATION OF
DETENTION ORDER
*U.S. v. Williams* CR07-0645 MMC                         3

1    The government responded with two principal arguments.  First, government counsel
2    highlighted Mr. Williams's prior record of probation and parole violations as evidence of his lack
3    of willingness or inability to abide by court orders.  Second, the government claimed that Mr.
4    Williams committed crimes during the investigation of the present case, even after he had been
5    arrested by local police, thus supposedly demonstrating a likelihood that he would commit
6    further crimes if released.  The government also argued that Mr. Williams had committed crimes
7    during the period of time that he resided with his mother and that her home was consequently an
8    unsuitable domicile.  The argument concluded with the assertion that Mr. Williams had an
9    incentive to flee since the government could file notice of a prior conviction, thereby increasing
10   the possible penalty to life in prison.

11   Defense counsel responded by observing that Pretrial Services believed that any flight
12   risk could be ameliorated.  He also reiterated that home detention with electronic monitoring and
13   G.P.S. would effectively reduce any risk of flight or danger.

14   At the close of the hearing and in a later written order, the magistrate ruled that, although
15   the risk of flight had been dispelled, the presumption against release based upon danger had not
16   been rebutted.  The court found that the prior record involving drugs and force or violence was a
17   combination of explicit concern at the time of enactment of the Bail Reform Act.  (It must be
18   noted that Mr. Williams actually has no violent convictions on his record.  Presumably, the court
19   was referring to prior burglary cases, for which no evidence of violence was proffered).  The
20   court also noted that the family apparently was not able to positively influence Mr. Williams.
21   The court found Mr. Williams to be unamenable to supervision, due to prior parole or probation
22   violations and discounted the defense argument that his priors were dated.

23   Finally, the court was of the opinion that the evidence was very strong and showed Mr.
24   Williams continuing to engage in criminal activity even after he knew he was aware of law
25   enforcement interest or after his arrest for the same criminal conduct.  The magistrate did not

26

DEF.'S MOT. FOR REVOCATION OF
DETENTION ORDER
*U.S. v. Williams* CR07-0645 MMC                4

believe that the defense had proffered conditions that would reasonably assure the safety of the community.

Since the time of the initial bail hearing, the number of available measures to address the court's concerns have increased. Mr. Williams's brother, Travis, who was traveling at the time of the first hearing, has indicated that he and his wife are now willing to post their house, with an equity of $270,000.[3] The total equity for posting, based on the homes of the mother and brother of Mr. Williams now stands at over one half of one million dollars.

## DISCUSSION

### I.  Standard of Review

This court reviews the magistrate's detention order de novo. *See United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990). The Ninth Circuit has held that because magistrate detention orders are prompt and of a somewhat preliminary nature, it is important that the district court have the ability to fully review the decision to detain. *See id.* at 1191-93. This includes the ability to review the facts of the case and requires that the court make its decision without deference to the ultimate findings of the magistrate. *See id.*

### II.  The Circumstances Under Which Detention Is Permitted By the Bail Reform Act Are Strictly Limited

The Bail Reform Act sanctions pretrial detention "[o]nly in rare circumstances." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985). Ensuring pretrial release whenever possible is one of the Act's fundamental purposes, and it accordingly provides numerous, detailed, and flexible alternatives to detention. *See* 18 U.S.C. 3142©. The court is required to carefully consider these alternatives in an attempt to craft a solution that balances the government's interests in the safety of the community and the presence of the defendant at trial with the defendant's important right to be free from restraints on his liberty. *See United States v.*

---

[3] Counsel avers that the defendant's brother and sister-in-law have indicated their willingness to post the above-mentioned home.

DEF.'S MOT. FOR REVOCATION OF
DETENTION ORDER
*U.S. v. Williams* CR07-0645 MMC                5

*Orta*, 760 F.2d 887, 890-91 (8th Cir. 1985) (*en banc*). Only when such a balance cannot be struck under any circumstances is detention appropriate.

Importantly, a magistrate's findings that a defendant poses a flight risk or that the defendant is a danger to the community would not, by themselves, support an order for pretrial detention. The magistrate must instead consider the variety of release conditions at the court's disposal. These options enable pretrial release subject to restrictions that address the concerns of flight and danger. *See id.* at 890; 18 U.S.C. § 3142(e). Given the availability of these alternative restrictions, as well as their effectiveness and potential intensity, "very few defendants will be subject to pretrial detention." *Id*. at 891.

Magistrate Judge Zimmerman failed to adequately consider these alternatives with respect to Mr. Williams. The magistrate judge also failed to consider pertinent facts in weighing the factors required by § 3142(g). As a result, Judge Zimmerman erroneously found Mr. Williams to be a danger to the community.

### III.     The Magistrate Judge Did Not Adequately Weigh the § 3142(g) Factors

The magistrate judge's detention order failed to properly consider pertinent facts in applying the factors required by 18 U.S.C. § 3142(g). Those factors are:

> (1) the nature and circumstances of the offense charged;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including, among other considerations, character, physical and mental condition, employment, family, record of appearance at previous court appearances, and past conduct and criminal history;
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

With respect to the first two factors, although Mr. Williams is charged with committing drug conspiracy and distribution crimes, the government did not proffer that he played a leadership role in the alleged conspiracy. Evidence review at this point suggests that the government would be unable to prove that Mr. Williams was more than a small-time, street-level dealer whose source of supply was a person of much greater significance. Mr. Williams is

1  alleged to have possessed relatively small quantities of drugs and to have possessed them over a
2  relatively small time frame, when compared to the length of the overall investigation. And as is
3  well-known, the weight of the evidence, is the least important factor to be considered. *United*
4  *States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).

5  　　　　The third factor, concerning the history and characteristics of the defendant, is of mixed
6  significance in this case. Mr. Williams concedes that he has a number of previous convictions,
7  but he steadfastly maintains that the vast majority are well in excess of ten years old. Contrary to
8  the magistrate's conclusion, Mr. Williams has spent most of the past ten years out of custody.
9  He served eight months beginning in 1996 for possessing a firearm, followed by two brief parole
10 revocation terms in 1999 and 2000. He later served 2 years in 2001 for a second degree burglary
11 conviction. Mr. Williams also disputes the magistrate's characterization of several of his priors
12 as involving violence or the threat of violence. Other than the ten year old felon-in-possession
13 conviction, it is not clear that any other conviction involved violence or the threat of violence.
14 Burglary, whether of the first or second degree, need not involve violence and no evidence was
15 proffered to the contrary in regards to his relevant priors.

16 　　　　The detention order failed to give proper weight to key facts that favor Mr. Williams's
17 release. First, there is no evidence that Mr. Williams has missed a court appearance since 1974.
18 Second, whatever one might say about his conduct during comparatively lax state probation or
19 parole, the heightened level of federal pretrial supervision would be much more likely to
20 minimize any danger to the community.

21 　　　　Third, the deterrent effect of the posting of his mother's home would be considerable.
22 The magistrate improperly weighted the past lack of familial influence. There is no evidence that
23 the family home was ever at risk when Mr. Williams committed past crimes. Notably, that
24 deterrent effect has doubled since the initial bail hearing, given that his brother and sister-in-
25 law's home is also to be posted.

26

Moreover, the magistrate was unduly dismissive of the efficacy of electronic monitoring with G.P.S. Any effort to stray beyond permissible bounds could be promptly dealt with. The magistrate's observation that monitoring would not prevent criminal conduct at home ignores the fact that there was no evidence proffered whatsoever that Mr. Williams committed any crimes at the home of his 89-year-old mother.

Prolonged detention also has the potential to impact Mr. Williams's ability to participate meaningfully in his defense. The Supreme Court has noted that pretrial detention disrupts a detainee's life and liberty in crucially important ways. *See Barker v. Wingo*, 407 U.S. 514, 532-33 (1972). The Supreme Court observed:

> If a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious.

*Id*. This is especially important in this multi-defendant wiretap case, which is likely to last considerably longer than the run-of-the-mill case. These considerations suggest that Mr. Williams belongs with the great majority of defendants in the class for which some type of pretrial release is appropriate.

Finally, with regards to the fourth pertinent factor, the detention order presents inadequate support for the conclusion that the nature and seriousness of the danger to community precludes the release of Mr. Williams. If the nature of the danger is that he would commit crimes similar to those previously committed, home detention and monitoring would prevent such crimes. Moreover, as already argued, all but one of his previous crimes appear to be of a nonviolent nature.

**IV.   Available Conditions of Release Would Reasonably Assure Mr. Williams's Presence and the Safety of the Community**

The Bail Reform Act gives this court tremendous discretion in fashioning conditions of release. The Court can impose conditions of release that address any concerns about flight risk or danger to the community while also protecting both Mr. Williams's right to liberty prior to

DEF.'S MOT. FOR REVOCATION OF
DETENTION ORDER
*U.S. v. Williams* CR07-0645 MMC                8

1  trial and his right to participate actively in his defense.

2      Aside from the home detention and G.P.S. monitoring already suggested, the Court could
3  add curfew, stringent reporting, drug testing, and employment conditions.  Alternatively, the
4  Court could simply require Mr. Williams to remain in his home, caring for his mother except for
5  release for legal or medical reasons.  Mr. Williams stands ready to accept other conditions to
6  reasonably assure the safety of the community, as the Court deems necessary.

7

8  **CONCLUSION**

9      In light of the foregoing, Mr. Williams respectfully requests that this Court vacate the
10  magistrate's detention order and direct that he be released subject to conditions that the court
11  deems appropriate.

12

13  Dated: March 7, 2008

14                        Respectfully submitted,

15                        BARRY J. PORTMAN
                      Federal Public Defender

16

17                        /S/

                      RONALD TYLER
18                        Assistant Federal Public Defender

19

20

21

22

23

24

25

26

DEF.'S MOT. FOR REVOCATION OF
DETENTION ORDER
*U.S. v. Williams* CR07-0645 MMC        9