1  JOSEPH P. RUSSONIELLO (CABN 44332)
   United States Attorney
2
   BRIAN J. STRETCH (CABN 163973)
3  Chief, Criminal Division

4  BARBARA BRENNAN SILANO (MASSBAR 055540)
   KIRSTIN M. AULT (CABN 206052)
5  Assistant United States Attorneys

6    450 Golden Gate Avenue, Box 36055
     San Francisco, California 94102
7    Telephone: (415) 436-7223/6940
     kirstin.ault@usdoj.gov
8    barbara.silano@usdoj.gov

9  Attorneys for Plaintiff

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12               SAN FRANCISCO DIVISION

13  UNITED STATES OF AMERICA,        )    No. CR 07-00645 MMC
                                     )
14          Plaintiff,               )
                                     )
15  v.                               )    OPPOSITION TO DEFENDANT'S MOTION FOR
                                     )    REVOCATION OF MAGISTRATE'S DETENTION
16  RONALD WILLIAMS,                 )    ORDER
                                     )
17          Defendant,               )
    _____  )
18

19                    I.    **INTRODUCTION**

20          The defendant's motion to reverse the magistrate's detention order should be denied.

21  Ronald Williams is a life-long criminal with multiple felony convictions for narcotics, weapons,

22  and theft offenses.  When he has been released from custody under supervision in the past, he

23  has consistently failed to abide by the conditions of his release, most importantly, by committing

24  new offenses while on probation or parole.  Williams exhibited similar behavior in this case

25  when he continued regular purchases of heroin from his suppliers even after his arrest on

26  September 13, 2006.  As Magistrate Judge Zimmerman found, there are simply no conditions of

27

28  OPPOSITION TO DEFENDANT'S MOTION
    FOR REVOCATION OF DETENTION ORDER
    CR 07-00645 MMC                    1

release that will ensure the safety of the community if Williams were released.  Therefore, the defendant's motion to reverse the magistrate's detention order should be denied.

## II.    BACKGROUND[1]

### A.    The Charged Conduct

Between August 18, 2006 and August 14, 2007, the Honorable Phyllis J. Hamilton, signed five court orders authorizing the interception of telephone calls occurring over telephones belonging to members of the Camacho-Mendez drug trafficking organization.  During the first period of interception, from August 18, 2006 through approximately September 18, 2006, calls were intercepted on the telephone of Daniel Verdugo Leon, during which the defendant Ronald Williams ordered heroin and cocaine from Leon in the following amounts on the following days:

- 8/21/06      6 ounces cocaine
- 8/22/06      ½ ounce heroin
- 8/27/06      ½ ounce heroin
- 8/31/06      5 ounces cocaine
- 9/13/06      ½ ounce heroin.

On September 13, 2006, the defendant was arrested and ½ ounce of heroin was seized from his person.  The defendant was released from custody on or about September 16, 2006. Interception of Verdugo Leon's telephone ceased on or about September 18, 2006.

The second period of interception of telephones used by Daniel Verdugo Leon began on October 24, 2006, and lasted through approximately November 24, 2006.  During this time, Williams was intercepted ordering heroin and cocaine from Verdugo Leon in the following amounts on the following days :

- 10/31/06      9 ounces cocaine
- 11/2/06      ½ ounce heroin

---

[1]      The facts recited in this section are supported by the Declaration of Jeff Lundergard, submitted herewith.

|   |   |
|---|---|
| • 11/7/06 | ½ ounce heroin |
| • 11/9/06 | ½ ounce heroin |
| • 11/12/06 | ½ ounce heroin |

In December 2006, Daniel Verdugo Leon was killed in a drive-by shooting. Thereafter, some of his customers, including Williams, began to be supplied by Humberto Ceja-Barajas. Ceja-Barajas continued to use the same telephone number that had been used by Verdugo Leon. From November 6, 2006 through February 12, 2007, Williams contacted the telephone used by Verdugo Leon and Ceja-Barajas approximately 360 times. No wiretap was active during this time period. On February 12, 2007, the third period of interception began on the telephone that had been used by Verdugo Leon and was now being used by Ceja-Barajas. On February 13, 2007, calls were intercepted during which Williams arranged to meet Ceja-Barajas to purchase heroin. On or about February 15, 2007, Ceja-Barajas stopped using this telephone.

Shortly thereafter, Ceja-Barajas began using a new telephone number. Between February 26, 2007 and May 31, 2007, Williams contacted the new telephone number approximately 612 times. A wiretap was authorized for this telephone on or about May 7, 2007, and the defendant was intercepted ordering narcotics from Ceja-Barajas in the following amounts on the following dates:

|   |   |
|---|---|
| • 5/8/07 | 2 ounces cocaine |
| • 5/8/07 | ½ ounce heroin |
| • 5/9/07 | 9 ounces cocaine |
| • 5/11/07 | 1 ounce heroin |
| • 5/14/07 | ½ ounce heroin |
| • 5/15/07 | ½ ounce heroin |
| • 5/21/07 | ½ ounce heroin |
| • 5/22/07 | 1 ounce heroin |
| • 5/26/07 | ½ ounce heroin |

1           •     5/29/07     ½ ounce heroin

2           •     5/31/07     1 ounce heroin

3     On May 31, 2007, the defendant was arrested and approximately 1 ounce of heroin was

4 found on his person and in his car. The interception of Ceja-Barajas' telephone ceased in early

5 June. No further interceptions were conducted on telephones used by Williams' supplier Ceja-

6 Barajas.[2]

7     On October 11, 2007, an indictment was returned charging the defendant with one count

8 of conspiracy to possess with intent to distribute and distribute heroin, in violation of 21 U.S.C. §

9 846, and two counts of possession with intent to distribute heroin, in violation of 21 U.S.C. §

10 841(a)(1), based on the two heroin seizures described above.

11     **B.**    **Defendant's Criminal History**

12     The defendant has an extensive criminal history that includes multiple convictions for

13 burglary, narcotics possession and sale, as well as being a felon in possession of a firearm. The

14 defendant's criminal record begins with a 1972 conviction for burglary and ends with a 2003

15 conviction for burglary, for which he was sentenced to four years in state prison. The

16 defendant's criminal history is summarized as follows:

| Date of Arrest | Charge | Date of Conviction | Sentence |
|---|---|---|---|
| 9/24/1971 | Burglary | 1/24/1972 | 3 years probation |
| 5/31/1972 | Receiving stolen property | 6/29/1972 | 45 days jail |
| 1/30/1973 | Burglary | 3/27/1973 | 180 days jail |
| 8/9/1974 | Theft | 11/12/1975 | 90 days jail |
| 10/25/1974 | Burglary - 2nd Degree | 3/13/1975 | 9 mos. jail<br>5 yrs. probation |

---

[2]    The wiretaps conducted in August 2007 were on telephones used by the persons who supplied Ceja-Barajas with heroin. Williams did not conduct transactions with these persons directly.

| Date of Arrest | Charge | Date of Conviction | Sentence |
|---|---|---|---|
| 11/12/1975 | Burglary - 2nd Degree | 3/11/1976 | 1 yr. jail<br>36 mos. probation |
| 9/20/1978 | Burglary - 1st Degree | 12/20/1978 | 4 yrs. prison<br>paroled - 5/21/1981 |
| 12/8/1981 | Burglary - 2nd Degree | 1/21/1982 | 3 yrs. prison<br>3 yrs. probation<br>paroled - 9/12/1983<br>1/5/1984 - parole violation<br>7/26/1984 - parole violation<br>8/6/1996 - parole violation<br>11/5/1991 - parole violation<br>3/24/1992 - parole violation |
| 5/11/9184 | Disorderly conduct | 6/13/1984 | 60 days jail |
| 1/3/1985 | Theft | 1/17/1985 | 1 year jail<br>1 year probation |
| 1/31/1986 | Possession of narcotics | 2/20/1986 | 30 days jail<br>3 years probation |
| 5/1/1989 | Possession of cannabis | | probation revoked |
| 5/22/1989 | transportation/sale narcotics | 8/14/1989 | 1 year jail<br>4 years probation |
| 6/26/1991 | Auto theft | 7/11/1991 | 44 days jail<br>12 mos. probation |
| 5/28/1992 | Possession narcotics for sale | 7/13/1992 | 2 years prison |
| 7/22/1993 | Burglary - 1st Degree | 8/31/1993 | 3 years prison |
| 10/15/1996 | Felon in possession of firearm | 12/10/1996 | 16 mos. prison<br>2/16/99 - parole violation<br>5/30/2000 - parole violation |
| 9/18/2001 | Burglary - 2nd Degree | 6/9/2003 | 4 years prison |

## III.    DISCUSSION

**A.    Legal Authority to Detain Defendant**

Under the Bail Reform Act, an authorized judicial officer may order the detention

or release of a defendant pending trial.  A rebuttable presumption of both dangerousness

OPPOSITION TO DEFENDANT'S MOTION
FOR REVOCATION OF DETENTION ORDER
CR 07-00645 MMC                              5

1    and risk of flight exists when the defendant is charged with a drug felony that carries a

2    maximum term of imprisonment of ten years or more.  18 U.S.C. § 3142 (e).  Once the

3    defendant produces some evidence to rebut the presumption, the presumption has been

4    rebutted.  *See United States v. Cook*, 880 F. 2d 1158, 1162 (10th Cir. 1989).  However, the

5    presumption does not disappear, but rather remains as a factor for consideration in the

6    Court's determination.  *Id*.  Section 3142 and its legislative history indicate that

7    allegations of offenses involving narcotics activity should carry great weight in the

8    court's determination on release, in as much as, they are equated with crimes of violence.

9    *United States v. Freitas*, 602 F. Supp. 1286, 1294 (N.D. Cal 1994).

10         The potential sentences in this case far exceed those sufficient to trigger a

11    presumption and place an enormous incentive on the defendant to flee.  In the matter

12    before this court, the defendant faces a maximum of life in prison, and a minimum

13    mandatory term of imprisonment of ten years.  Because the defendant also has multiple

14    prior drug felonies, his exposure is a mandatory life prison term.  As for the rebuttable

15    presumption of danger, 18 U.S.C. § 3142(f)(1), identifies those types of crimes in which

16    "a rebuttable presumption arises that no condition or combination of conditions will

17    reasonably assure the safety of any other person and the community." 18 U.S.C. §

18    3142(e).  *See United States v. Salerno*, 481 U.S. 739, 750 (1987) ("The act operates only

19    on individuals who have been arrested for a specific category of extremely serious

20    offenses. . . .  Congress specifically found that these individuals are far more likely to be

21    responsible for dangerous acts in the community after arrest.") (citation omitted); S.Rep.

22    No. 98-225, p. 6-7 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3189; *United States v.*

23    *Koon*, 6 F.3d 561, 566 (9th Cir. 1993) (justifying the presumption of dangerousness in 18

24    U.S.C. § 3142(f)(1) because "there is a small but identifiable group of particularly dangerous

25    defendants as to whom neither the imposition of stringent release conditions nor the prospect of

26    revocation of release can reasonably assure the safety of the community or other persons").  In

27

28    OPPOSITION TO DEFENDANT'S MOTION
     FOR REVOCATION OF DETENTION ORDER
     CR 07-00645 MMC                    6

1    *United States v. Cook*, 880 F. 2d 1158, 1161 (10th Cir. 1989), the Court noted that safety of the

2    community is broader than the danger of physical violence and recognized that Congress had

3    equated drug trafficking with danger to the community.  The court concluded that the risk that a

4    defendant will continue to engage in drug trafficking constitutes a danger to the community.

5        A judicial officer may detain a defendant if the government proves by a preponderance of

6    the evidence that the defendant poses a risk of flight. *United States v. Motamedi*, 767 F. 2d 1403,

7    1407 (9th Cir. 1985), *United States v. Gebro*, 948 F. 2d 1118, 1121 (9th Cir. 1991).  The

8    preponderance of evidence shows a risk of flight where, among other factors, the weight of the

9    evidence is enough to alert the defendant to a "reasonable possibility of conviction." *United*

10    *States v. Townsend*, 897 F. 2d 989, 993-94 (9th Cir. 1990).  In assessing flight, a court may

11    consider that a defendant having no visible means of support, no property, who is well known to

12    narcotics officers, and has ample funds to provide him with a means of absconding is a poor

13    flight risk and a case in which bail is properly denied.  A defendant's financial condition and the

14    length of sentence he or she faces are of particular importance in assessing the risk of flight.

15        The judicial officer may also detain a defendant where the government shows by clear

16    and convincing evidence that no release condition will reasonably assure the safety of the

17    community.  Specifically, detention may be ordered where the court finds no condition or

18    combination of conditions could prevent the defendant's continued or future criminal activity.

19    *United States v. Salerno*, 481 U.S. 739 (1987).

20        In assessing danger, physical violence is not the only form of danger contemplated by the

21    statute.  Danger to the community can be in the form of continued narcotics activity or even

22    encompass pecuniary or economic harm. *United States v. Reynolds*, 956 F.2d 192 (9th Cir. 1992).

23    Propensity to commit crime generally may constitute a sufficient risk of danger to come within

24    the act. *See United States v. Karmann*, 471 F. Supp. 1021, 1022 (C.D. Cal 1979).

25        When assessing a defendant's risk of flight and danger to the community, the court

26    considers the following factors:

27

28    OPPOSITION TO DEFENDANT'S MOTION
       FOR REVOCATION OF DETENTION ORDER
       CR 07-00645 MMC          7

(1)     the nature and circumstances of the offense charged, including whether the offense involves a controlled substance;

(2)     the weight of the evidence against the person:

(3)     the history and characteristics of the person;

(4)     the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

1.     Nature and Circumstances of the Offense

The United States has moved to detain Ronald Williams pursuant to Title 18 U.S.C. § 3142 as both a flight risk and a danger to the community.  Williams is indicted in three counts of the indictment, one of which carries a minimum mandatory sentence of ten years to life in prison.  All of the charges invoke the presumption that he is both a flight risk and a danger to the community. *See* 18 U.S.C. §3142 (e).  Williams is charged with being a member of a large heroin trafficking ring that dealt in kilograms of heroin over several years.  Although Williams was a lower-level member of that conspiracy, he was a consistent and reliable dealer of the organization's products.  When Daniel Verdugo Leon, Williams' source of supply, was killed, Williams did not stop dealing heroin.  He continued his connection to the larger organization and began purchasing from Verdugo's replacement Ceja-Barajas.

Ceja-Barajas is currently a fugitive.  Thus, if Williams were released, he would have access to a ready source of supply to continue drug dealing and a person who could assist him to flee.

2.     Strength of the Evidence

The evidence against Williams is strong.  Multiple conversations were intercepted during which Williams ordered heroin from his supplier.  On two occasions, Williams was watched as he received the heroin he had ordered from his supplier.  Williams was then arrested, and the heroin he had just purchased was recovered from his person and/or his car.

4.     History and Characteristics

1    Williams has been a criminal for the past thirty years. He has been convicted four times

2    for narcotics offenses, once for possession of a firearm, and twelve times for burglary or theft.

3    Williams has served six terms in state prison and eleven terms in county jail. Williams has been

4    placed on probation eight times, and he has violated the conditions of his probation or parole on

5    every occasion.

6    Williams' criminal record demonstrates a profound disrespect for the rule of law and for

7    the leniency shown to him in the past. His extensive criminal history makes him a career

8    offender and exposes him to a potential life sentence. Williams' criminal history is not only a

9    strong indicator of the defendant's inability and unwillingness to live by conditions set by the

10   court, but it is an equally strong incentive for him to flee.

11   A defendant's commission of further crimes while released on conditions weighs heavily

12   against the granting of bail. *United States v. Anderson*, 670 F. 2d 328, 330 (D.C. Cir. 1982)

13   (defendant not entitled to bail where, shortly after he was placed on probation, he committed the

14   same narcotics violation a second time); *United States v. Lucan*, 716 F. Supp. 477, 479 (D. Or.

15   1989) (bail not appropriate where defendant, while on probation, continued his criminal

16   activity).

17        "The Bail Reform Act specifies neither the kinds of harm nor the particular factors to
          be considered in determining whether a defendant poses a danger to the community.
18        The trial judge's study of decisions interpreting the Act's 'danger to . . . the
          community' provision, however, convinces him that courts are not confined in such
19        cases to considering only harms involving an aura of violence. We agree and hold
          that a defendant's propensity to commit crime generally, even if the resulting harm
20        would be not solely physical, may constitute a sufficient risk of danger to come
          within the contemplation of the Act."

21
22        *United States v. Provenzano*, 605 F.2d 85, (3rd Cir., 1979)[3]

23   _____

24        [3]See, e. g., *United States v. Karmann*, 471 F.Supp. 1021, 1979 (C.D.Cal.) (indication that
     defendant would continue to defy income tax laws and regulations); *United States v. Miranda*,
25   442 F.Supp. 786 (S.D.Fla.1977) (propensity to engage in drug trafficking); *United States v. Parr*,
     399 F.Supp. 883 (S.D.Tex.1975) (threat of continued misappropriation of public assets); *United*
26   *States v. Rabena*, 339 F.Supp. 1140 (E.D.Pa.1972) (repeated involvement in extortion racket
     including threats and acts of violence); *United States v. Louie*, 289 F.Supp. 850 (N.D.Cal.1968)
27

28   OPPOSITION TO DEFENDANT'S MOTION
     FOR REVOCATION OF DETENTION ORDER
     CR 07-00645 MMC                    9

Williams has shown his disrespect for the law not only by his repeated parole and probation violations but by his continuing criminal conduct after his first arrest in this case. Williams was arrested on September 13, 2006. Within six weeks, he was intercepted ordering cocaine from his supplier. He then proceeded to order heroin four times in a two week period.

Although Williams has resided in the Oakland area for most of his life, he has not maintained employment since 1971. He reported to the pretrial services officer that his entire employment history for the past thirty years consists of five months working at McDonald's in 1995 and one moth as a construction worker in 2005. Williams is a career criminal in the true sense of the term, and he has given the Court no reason to believe that if he were released, he would not continue the same pattern of behavior in which he has engaged in the past. The threat of sanctions has never been enough to prevent Williams from committing crimes in the past and there is no reason to believe that it will be enough in this case.

     5.    <u>Nature and Seriousness of Danger to the Community.</u>

As the courts and Congress have consistently recognized, illegal narcotics carry an inherent risk of violence. The value of the narcotics themselves and the money involved in purchasing and selling them make drug dealers a constant target for other criminals interested in stealing their money or drugs. These circumstances carry an inherent risk of violence, not only for those involved in the drug deals but for the surrounding community. In addition, drugs users commonly commit property crimes in an effort to obtain the money necessary to purchase drugs. This is particularly common with a highly addictive drug such as heroin. Thus, the sale of heroin creates circumstances where the community is exposed to the violence and other criminal activity that consistently surround the drug trafficking trade.

Williams' criminal history shows that he has not only been involved with illegal

(interstate transportation of forged securities).

OPPOSITION TO DEFENDANT'S MOTION
FOR REVOCATION OF DETENTION ORDER
CR 07-00645 MMC          10

1   narcotics but also with firearms, and he has been convicted over ten times for property crimes,

2   including first and second degree burglary.  Thus, Williams presents a danger to the community

3   on many fronts.  As his history demonstrates, it is virtually certain that Williams will resume his

4   criminal conduct upon his release.  Whether he continues to deal in heroin and cocaine, or

5   whether he returns to the property crimes that predominate his criminal past, the community in

6   which Williams resides will be at risk from his continuing criminal conduct.  Williams has given

7   this Court no reason to believe that his behavior on release would be any different this time than

8   it has in the past.  As the magistrate court concluded, there are simply no conditions that this

9   Court can fashion that would ensure that the community will be safe from Williams' continuing

10  criminal behavior.

## IV.   CONCLUSION

12          Williams faces a lengthy prison term if he is convicted in this case.  Therefore, he has a

13  strong incentive to flee were he released.  Moreover, Williams presents a serious danger to the

14  community.  For the past thirty years, he has not held a job, but instead has committed one crime

15  after another.  When he has not been in prison or jail, Williams has shown a complete disregard

16  for conditions that have been set for his release from custody.  He has violated probation and

17  parole on numerous occasions, and the sanction of being sent back to prison has not affected his

18  behavior.  Williams has given this Court no reason to believe that he will behave differently if he

19  were released now.   The magistrate court correctly assessed Williams' potential danger to the

20  community and the likelihood that he will reoffend if he is released.  The Court should agree

21  with the magistrate's ruling and order that Williams remain detained pending resolution of his

22  case.

23  DATED: March 14, 2008                    Respectfully submitted,

24                                          JOSEPH P. RUSSONIELLO
25                                          United States Attorney
                                                   /s/
26                                          _____
                                            BARBARA BRENNAN SILANO
                                            KIRSTIN M. AULT
27                                          Assistant United States Attorneys

28  OPPOSITION TO DEFENDANT'S MOTION
    FOR REVOCATION OF DETENTION ORDER
    CR 07-00645 MMC                          11